**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC, | CIVIL ACTION NO. 4:18-cv-701 |
| Plaintiff, | |
| v. | |
| ONEPLUS TECHNOLOGY (SHENZEN) CO., LTD., | JURY TRIAL DEMANDED |
| Defendant. | |

<u>**AMERICAN PATENTS' OPPOSITION TO
ONEPLUS TECHNOLOGY (SHENZEN) CO., LTD.'S MOTION TO DISMISS**</u>

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................1

II.  ONEPLUS WAS PROPERLY SERVED BY SUBSTITUTED SERVICE ON THE
     TEXAS SECRETARY OF STATE..........................................................................2

     1.   OnePlus Meets the Requirements for Substituted Service on the Texas Secretary
          of State .........................................................................................................3

          a.   Texas Law Provides for Substituted Service on the Secretary of State for
               Companies Like OnePlus .................................................................3

          b.   OnePlus Does Not Dispute that Substituted Service Was Proper Under
               Texas Law...........................................................................................4

     2.   The Hague Convention Is Not Implicated by Service on the Secretary of State.............5

          a.   The Convention Applies Only to Transmittals Culminating in Service Abroad.......6

          b.   Substituted Service on the Texas Secretary of State Occurs in the United States.....8

               i)    Substituted Service is Complete as a Matter of Law When the Secretary is
                     Served ..................................................................................9

               ii)   MacroSolve Does Not Change This Analysis .................................13

               iii)  Substituted Service on the Secretary of State Is Not Service by Mail ............16

III. IN THE ALTERNATIVE, THE COURT SHOULD PERMIT SERVICE BY
     ALTERNATE MEANS .............................................................................17

IV.  CONCLUSION.............................................................................................20

I.    **INTRODUCTION**

Defendant OnePlus, a nonresident of Texas, does business in Texas but does not maintain a Texas registered agent.  This patent case arises out of the business done in Texas.  So as provided by Texas's long-arm statute (applied through the Federal Rules of Civil Procedure), American Patents served OnePlus by substituted service on the Secretary of State of Texas.  And because Texas law makes the Secretary of State an involuntary domestic agent for receiving service on behalf of OnePlus, service was completed in the United States when the Secretary was served—making the Hague Convention inapplicable.

OnePlus does not dispute that the Texas requirements for substituted service on the Secretary of State were satisfied in this case.  OnePlus instead contends that because Texas's statutory scheme for substituted service obligates the Secretary of State, after being served, to forward copies of the complaint and summons to OnePlus abroad, the Hague Convention is implicated and substituted service under Texas law was unavailable.

OnePlus rests its arguments for improper service almost entirely on three district court cases.  Two of those cases are pure dicta as to the argument made by OnePlus.  The other case found that "the Hague Convention is implicated" because the Texas scheme for substituted service on a foreign defendant through the Secretary of State results in "the transmittal of judicial documents abroad," without examining whether substituted service on the Secretary is completed domestically or not.  *MacroSolve, Inc. v. Antenna Software, Inc.*, No. 6:11-cv-287, 2012 WL 12903085, *2 (E.D. Tex. Mar. 16, 2012).

But, critically, all three opinions predate the Supreme Court's definitive statement last year on the scope of the Hague Convention in *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017).  *Water Splash* makes clear that "the scope of the Convention is limited to ***service*** of

1

documents." *Id.* at 1509 (emph. added).  The Convention "applies *only* when there is *both*

*transmission* of a document from the requesting state to the receiving state, *and service* upon the

person for whom it is intended." *Id.* (emph. added).  Indeed, Article 1 of the Convention

"eliminates [the] possibility" that the Convention applies to any transmissions abroad that "do

not *culminate in service*." *Id.* at 1509 (emphasis added).

Following *Water Splash*, the key issue is not whether a particular service method will

cause the transmission of judicial documents abroad.  The issue instead is limited to determining

whether a transmission of judicial documents abroad *culminates in service*.  And if the law of

the forum state provides that a particular method of service culminates domestically, the Hague

Convention simply is not implicated by related post-service transmissions that are sent abroad.

And as a matter of black-letter law in Texas, the Secretary of State is an involuntary

domestic agent for *receiving* service of process for companies like OnePlus, and service is

complete upon the receipt domestically of the complaint and summons by the Secretary.  That

Texas law also obligates the Secretary, after being served, to forward those documents to the

defendant abroad is immaterial because that transmission does not culminate in service.  Service

is effective under Texas law whether or not the defendant receives the documents forwarded by

the Secretary; indeed, the Secretary is not authorized by Texas law to serve process at all.

For these reasons and as explained further below, OnePlus's motion to dismiss should be

denied.

## II.  ONEPLUS WAS PROPERLY SERVED BY SUBSTITUTED SERVICE ON THE TEXAS SECRETARY OF STATE

OnePlus does not dispute that it satisfies the substantive conditions of Texas's long-arm

statute, TCPRC §§ 17.042, 17.044, 17.045, for substituted service on the Secretary of State.

Instead, OnePlus asserts that, because copies of a complaint and summons must be forwarded to

a nonresident defendant according to Texas's statutory scheme for substituted service, American

Patents could not resort to Texas law for substituted service.  OnePlus asserts that American

Patents needed to effectuate service via the Hague Convention.  This is incorrect.

1.    *OnePlus Meets the Requirements for Substituted Service on the Texas Secretary of State*

    a.    <u>Texas Law Provides for Substituted Service on the Secretary of State for Companies Like OnePlus</u>

Service on business entities, including "domestic or foreign corporation[s]," is governed

by Federal Rule of Civil Procedure 4(h).  Rule 4(h) has two subparts: part (1) applies to service

"in a judicial district of the United States," and part (2) applies to service "at a place not within

any judicial district of the United States[.]"  Under Rule 4(h)(1)(A), when serving a foreign

corporation, service may be made in a judicial district of the United States "in the manner

prescribed by Rule 4(e)(1) for serving an individual."  In turn, Rule 4(e)(1) provides for service

by "following state law for serving a summons in an action brought in courts of general

jurisdiction in the state where the district court is located or where service is made."

The laws of Texas provide for substituted service on certain nonresidents through the

Secretary of State:

> The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

Tex. Civ. Prac. & Rem. Code § 17.044(b).[1]  In turn, the Secretary forwards the served documents

to the nonresident:

---

[1] Likewise, the Texas Administrative Code provides:  "Service on the Secretary.  Service of process on the Secretary of State may be accomplished under many of the existing statutory authorities by delivering to the Secretary of State or to any clerk so designated by the secretary of state, two copies of the process.  The name and appropriate address of the person being named

> If the secretary of state is served with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's home or home office and the secretary of state shall immediately mail a copy of the process to the nonresident at the address provided.

*Id.* § 17.045(a).[2]

Texas' long-arm statute explicitly defines certain acts in this state—including

commission of a tort in whole or in part—as doing business in this State:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
> > (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
> > (2) commits a tort in whole or in part in this state; or
> > (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

*Id.* § 17.042; *see also Ashley v. Hawkins*, 239 S.W.3d 175, 178 (Tex. 2009) ("A

nonresident defendant engages in business in this state, 'if, among other acts . . . the nonresident

*commits a tort in whole or in part in this state*.'" ).

### b.   OnePlus Does Not Dispute that Substituted Service Was Proper Under Texas Law

OnePlus does not dispute that substituted service on the Secretary of State was proper

under Texas law.  It does not dispute that it is a nonresident which does not maintain a regular

place of business or a designated agent for service of process in Texas.  Dkt. 1 at ¶¶ 1-2; Mot. at

3.  Nor does it dispute that the complaint alleges it does business in Texas by committing acts of

infringement in Texas and/or by contracting with Texas residents in the course of making, using,

---

as defendant must be provided.  It is the responsibility of the attorney or person seeking service of process to determine when to obtain and to secure personal service of process upon the Secretary of State."  1 Tex. Admin. Code § 71.21(a).

[2] Likewise, the Texas Administrative Code provides:  "Forwarding by the Secretary.  One copy of the petition and citation will be forwarded by registered or certified mail, as appropriate under the particular statute under which service is being made, to the person named at the address provided."  1 Tex. Admin. Code § 71.21(b).

offering to sell, selling, and/or importing accused products in Texas.  Dkt. 1 at ¶ 4; *see also ATEN Intern. Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 121 (E.D. Tex. 2009) ("Since patent infringement is a tort, the sale of [a defendant's] infringing products in Texas is sufficient evidence that [the defendant] was 'doing business' under the Texas service statute, and thus sufficient evidence to meet the service provisions of Federal Rule of Civil Procedure 4(h)(1)(A).").  And it does not dispute that this lawsuit arises out of the business OnePlus does in Texas.  Thus, there is no dispute that substituted service was warranted under the laws of Texas.[3]

2.      ***The Hague Convention Is Not Implicated by Service on the Secretary of State***

Instead, OnePlus argues that American Patents was not justified in resorting to Texas's substituted service provisions at all, and that American Patents instead needed to proceed via the Hague Convention.  But service on the Secretary of State is domestic service and, as such, does not implicate the Hague Convention.  OnePlus's argument rests on the faulty premise that ***any*** transmittal of service-related documents triggers applicability of the Hague Convention.  The Supreme Court has made clear that the scope of the Hague Convention is not so broad.  Rather, it applies only to service which culminates abroad—a question which is answered by looking to the law of the forum state.  And controlling Texas law holds that substituted service on the Secretary of State is complete when the Secretary receives service, which happens in Texas.  *See Campus Investments, Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004).

---

[3] Nor does OnePlus assert any formal defects concerning the substituted service.  Although it notes that the proof of service filed in this Court, Dkt. 10, includes only the Secretary of State's address, it does not argue that the Secretary of State failed to immediately mail a copy of service documents to OnePlus, as required by § 17.045.  And indeed, the Secretary did forward the required documents to OnePlus on October 9, 2018.  Ex. A [Certificate of Service].

a.  **The Convention Applies Only to Transmittals *Culminating* in *Service Abroad***

The U.S. Supreme Court has twice examined the scope of the Hague Convention as concerns service of process—most recently, in last year's *Water Splash* decision—and has concluded that the Convention is carefully and narrowly tailored to apply ***only*** to transmissions ***culminating in service abroad***.  *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1509 (2017) ("The key structural point is that the scope of the Convention is limited to service of documents."); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988).  In particular, Article 1 of the Hague Convention defines its scope, and provides that it "'shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document ***for service abroad***.'"  *Id.* at 699 (quoting Hague Service Convention, [1969] 20 U.S.T. 361, 362) (emph. added).  In turn, "service of process" is limited to its technical definition: "[T]he term 'service of process' has a well-established technical meaning.  Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action."  *Id.* at 700.

The negotiating history of the Convention supports this interpretation.  During the drafting process, the delegates refined the language of Article 1 "[t]o be more precise," with the expressed intent of limiting the Convention only to documents transmitted "for service abroad." *Id.* at 700-01 (explaining word changes during drafting and delegates' concern that original phrasing might suggest applicability to transmissions abroad that did not culminate in service).  Crucially, the delegates' final report "confirms that the Convention does not use more general terms, such as delivery or transmission, to define its scope because it applies ***only*** when there is ***both transmission*** of a document from the requesting state to the receiving state, ***and service*** upon the person for whom it is intended."  *Id.* at 701 (emph. added).

6

Whether service takes place abroad is determined by reference to the law of the forum state. *Id.* at 701. Both the delegates to the Convention, and the Supreme Court in interpreting it, anticipated that signatories might draft their laws so as to designate an involuntary domestic agent for service and deem service complete upon receipt domestically by the agent. *Id.* at 701, 710-11 (Brennan, J., concurring). However, this does not leave foreign defendants without protections, because service must also meet federal requirements of due process. *Id.* at 705.[4] Thus, in *Schlunk*, substituted service on a foreign corporation was complete upon service of its domestic subsidiary as a matter of Illinois law. *Id.* at 706. It was immaterial that, to satisfy Due Process, the subsidiary also must have transmitted the complaint to the nonresident in Germany. *Id.* In so concluding, the *Schlunk* opinion holds:

> Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications. . . . The ***only*** transmittal to which the Convention applies is a transmittal abroad that is ***required as a necessary part of service***.

*Id.* at 707 (emph. added).

In *Water Splash*, the Supreme Court clarified the Hague Convention's scope in a way that eliminated any possible uncertainty that it extends beyond service of documents abroad:

> The key structural point is that the scope of the Convention is limited to service of documents. Several elements of the Convention indicate as much. First, the preamble states that the Convention is intended "to ensure that judicial and extrajudicial documents *to be served abroad* shall be brought to the notice of the addressee in sufficient time." And Article 1 defines the Convention's scope by stating that the convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document *for service abroad*." Even the Convention's full title reflects that the Convention concerns "Service Abroad."

---

[4] "Under that clause, foreign nationals are assured of either personal service, which typically will require service abroad and trigger the Convention, or substituted service that provides 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

137 S. Ct. at 1509 (emphases in original).  The Court reiterated the crucial point that the Convention **does not** apply to transmissions abroad that do not "**culminate in service**."  *Id.* ("As we explained, a preliminary draft of Article 1 was criticized 'because it suggested that the Convention could apply to transmissions abroad that do not culminate in service.'  The final version of Article 1, however, 'eliminates this possibility.'" (quoting *Schlunk*, 486 U.S. at 701)).

Thus, *Water Splash* reinforced the key points of *Schlunk* and clarified—in a way perhaps not apparent from *Schlunk* on its own—the dispositive issue in cases such as this one.  The key issue, following *Water Splash*, is not whether a transmission abroad of service-related documents happens at all, even if that transmission is required by statute (or as a practical matter to meet Due Process requirements).  Rather, the issue is narrowly limited to **where service culminates**.  If the law of the forum state provides that service culminates domestically, the Hague Convention simply is not implicated.

### b.   <u>Substituted Service on the Texas Secretary of State Occurs in the United States</u>

And there is no doubt that substituted service on the Texas Secretary of State culminates in Texas.  As a matter of black letter law in Texas, the Secretary of State is an involuntary domestic agent for service of process, and service is complete upon receipt domestically of the complaint and summons.  That the law requires post-service forwarding of service-related documents is immaterial.  Further, the three district court decisions on which OnePlus relies do not change the analysis.  Two of the three are pure dicta, and none had the benefit of the Supreme Court's *Water Splash* decision.  As a result, these decisions do not address the issue here, *i.e.*, whether substituted service occurs domestically or abroad.

> i)      *Substituted Service is Complete as a Matter of Law When the Secretary is Served*

Texas's statutory scheme for substituted service, as well as Texas state court decisions interpreting it, make clear that service is completed domestically.  In both structure and language, the relevant provisions unambiguously delineate between the legal ***role*** of the Secretary of State as a domestic agent for receiving process, and his[5] post-service clerical ***duty*** to forward copies of the service documents to a nonresident defendant.   That service is completed domestically is also confirmed by the amendments to the relevant provisions governing substituted service and the cases interpreting them.

**First**.  Texas Civil Practice & Remedies Code § 17.044(b) defines the role of the Texas Secretary of State in receiving substituted service.  Section 17.044(b) expressly provides that "[t]he secretary of state is an agent for service of process[.]"  This is a legal term with a specific meaning: an agent stands in the shoes of the nonresident defendant and ***is served*** with process on the nonresident's behalf.

Texas courts interpreting § 17.044 have ruled consistently.  In *Bonewitz v. Bonewitz*, 726 S.W.2d 227, 230 (Tex. Ct. App. – Austin 1987), the Texas Court of Appeals held that "service of process on the Secretary of State ***constitutes constructive service on the nonresident defendant***, thereby triggering the nonresident defendant's answer date." (emph. added).  The answer date does not depend on when the Secretary forwards copies of the service documents.  Later, the Texas Supreme Court affirmed this principle, concluding that "[w]hen substituted service on a statutory agent is allowed, the designee is not an agent for *serving* but for *receiving* service on the defendant's behalf."  *Campus Investments, Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004)

---

[5] The current Texas Secretary of State is Rolando Pablos.

9

(emph. in original).  In *Campus Investments*, the Texas Supreme Court held that service is complete upon service on the Secretary of State, even if the nonresident defendant never receives a forwarded copy of the service documents.  *Id.* (upholding default judgment against defendant who "never received anything the Secretary sent").  Thus, as a matter of Texas law, service on the Secretary alone—***not*** service plus forwarding—is "legally sufficient to charge the defendant with notice of a pending action."  *Schlunk*, 486 U.S. at 700.

Nor can the actions of the Secretary of State ever constitute service as a matter of Texas law, because the Secretary of State is not authorized to serve process at all :

> Article 4, sec. 26 of the Texas Constitution and Chapter 405 of the Texas Government Code provide for the authority and duties of the Secretary of State. We have reviewed these at length and have found no authority for the Secretary of State to serve process. . . . [N]umerous statutes require the Secretary of State to act as agent for service, but no statute authorizes him to serve process. . . . ***Accordingly, we conclude that the Secretary of State is not authorized by law to serve process.***

*World Distributors, Inc. v. Knox*, 968 S.W.2d 474, 479 (Tex. App. – El Paso 1998) (rejecting plaintiff's argument that Secretary of State had served process on nonresident defendant) (emph. added); *accord Leedo Cabinetry v. James Sales & Dist., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (same).  Because the Secretary of State is not authorized to serve process, his forwarding of service documents abroad necessarily cannot be an act that culminates in service.

**Second**.  Section 17.045 reinforces the meaning and intent of the Texas legislature by describing, in a separate provision, the duties of the Secretary of State ***after*** he is served with process:

> If the secretary of state is ***served*** with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's home or home office and the secretary of state shall ***immediately mail a copy*** of the process to the nonresident at the address provided.

§ 17.045 (emphasis added).  Section 17.045 maintains consistency with § 17.044(b) by reinforcing that it is the Secretary of State who is "served."  After service, the Secretary does not "serve" the nonresident; he "mail[s] a copy" of the process to the nonresident.  The Texas legislature is presumed to know the difference between the terms "serve" and "mail a copy."  It chose to distinguish between the act of "service," which is received by the Secretary of State in his role as agent, and the post-service duty to "mail a copy" of the service documents.

The Texas courts likewise recognize this distinction.  *Bonewitz*, 726 S.W.2d at 230 ("It does not follow from the Secretary of State's **duty to forward** process under *Whitney* that the time period within which the defendant must answer does not begin to run until the secretary has performed that duty." (emphasis added)).

**Third**.  The Texas Administrative Code maintains the distinction between "service of process in the technical sense," *see Schlunk*, 486 U.S. at 700-01, and the post-service forwarding of served documents.  Title 1, Chapter 71.21 of the Code provides in relevant part:

(a)  ***Service on the Secretary***.  ***Service of process on the Secretary of State may be accomplished*** under many of the existing statutory authorities ***by delivering to the Secretary of State or to any clerk so designated by the secretary of state***, two copies of the process.  The name and appropriate address of the person being named as defendant must be provided.  It is the responsibility of the attorney or person seeking service of process to determine when to obtain and to secure personal service of process upon the Secretary of State.

(b)  ***Forwarding by the Secretary***.  One copy of the petition and citation will be ***forwarded*** by registered or certified mail, as appropriate under the particular statute under which service is being made, to the person named at the address provided.

(c)  Certificate of Service.  Upon request, the Secretary of State will issue a certificate of showing:
  (1) That ***service*** was accomplished;
  (2) That a copy of the process was ***forwarded*** to the named defendant at the specified address; and
  (3) The disposition of the mailing shown on the postal return receipt.

1 Tex. Admin. Code § 71.21(a)-(c) (all emphases added).  Yet again, the legislature was careful to distinguish between *service*, which happens upon delivery to the Secretary of State of copies of the complaint and summons, and *forwarding*, which is a duty the Secretary of State must undertake after he is served.  The distinction is reinforced by the structure of this provision: as two separate concepts, service on the secretary and forwarding by the secretary are accordingly relegated to separate subsections.

**Fourth**.  The legislative history further supports this reading.  The Texas legislature knew the significance and intentionally selected the term "agent for service of process" when it drafted § 17.044(b).  A prior version of the statute provided in relevant part that a corporation:

> may be served with citation by serving a copy of the process upon the Secretary of State . . . , who shall be conclusively presumed to be the true and lawful attorney to receive such service of process; ***Provided that the Secretary of State shall forward*** a copy of such service to the person in charge of such business or an officer of such company, Or to such natural person by certified or registered mail, return receipt requested.

*Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 96 (Tex. 1973) (quoting Article 2031b, Section 6 (repealed 1985)) (emph. added).  Interpreting this language, Texas Supreme Court found that it could mean one of two things as to the role of the Secretary of State:

> It could be construed to mean that service is complete when the Secretary of State is served, whether the [*sic*] forwards the service or not; but that as the agent of the defendant, he ought to forward the service to the defendant.  Or it could mean that the Legislature intended to require that in order for the Secretary of State to be conclusively presumed to be the attorney for the defendant in another state, he Must forward the service; i.e., the Secretary of State is to be deemed the defendant's agent If, or Provided, he forwards the service as required by the statute.

*Id.* (concluding the latter to be the intent of the statute).

In later drafting § 17.044, though, the Texas legislature squarely eliminated this ambiguity with the addition of the "agent for service of process" language:

> [T]he revised law replaces the fictional appointment of the secretary of state with the simpler statement that the secretary of state "is an agent for service of process." The fiction is unnecessary and cumbersome; the revised law states the substantive effect of the fiction.

*See Bonewitz*, 726 S.W.2d at 229 n.1 (quoting Revisor's Note to § 17.044).  There can no longer be any question as to the legislature's intent: because the Secretary is an agent of the defendant, service is complete when the Secretary is served, whether he forwards the service or not.

The distinction between the Secretary's role as agent for receipt of process and his duty to forward is crucial in light of *Water Splash* and *Schlunk*.  As explained above, the Hague Convention delegates carefully and intentionally distinguished between "documents transmitted for ***service abroad***" and the mere "delivery or transmission" of documents that ***does not*** culminate in service.  The latter is explicitly exempted from the Convention.  It is clear that, under Texas's statutory scheme, service occurs in Texas at the time the Secretary receives service of process as involuntary domestic agent for the nonresident defendant.  *Campus Investments*, 144 S.W.3d at 466; *Bonewitz*, 726 S.W.2d at 230.  It does not happen abroad.  The drafters of the Hague Convention purposely excluded the post-service forwarding duties described in TCPRC § 17.045 and Tex. Admin. Code § 71.21(b) from the Convention's scope. As in *Schlunk*, forwarding copies ensures that substituted service comports with due process. But because service is complete as a matter of Texas law upon service on the Secretary, the Hague Convention is not implicated by that post-service forwarding.

*ii)*     MacroSolve *Does Not Change This Analysis*

In support of its motion to dismiss, OnePlus points to three district court cases that have purportedly reached a different conclusion: *MacroSolve, Inc. v. Antenna Software, Inc.*, No. 6:11-cv-287, 2012 WL 12903085 (E.D. Tex. Mar. 16, 2012); *Alternative Delivery Solutions, Ind. v. R.R. Donnelley & Sons Co.*, No. SA05CA0172-XR, 2005 WL 1862631 (W.D. Tex. Jul. 8

13

2005); and *Nocando Mem Holdings, Ltd. v. Credit Commercial de France, S.A.*, No. A.SA-01-1194-XR, 2004 WL 2603739 (W.D. Tex. Oct. 6, 2004).  Only one—*MacroSolve*—even has a holding relating to substituted service; OnePlus's quotes from the others are pure dicta.  And, more important, none of the three was decided with the benefit of *Water Splash*.  As a result, none analyzes the key issue in this motion: where does substituted service on the Texas Secretary of State culminate?

OnePlus relies most heavily on *MacroSolve*, but that decision did not hold as OnePlus contends.  *MacroSolve* takes a broad view of the Hague Convention.  It asserts that "the Hague Convention is implicated" simply because the Texas scheme for substituted service on a foreign defendant through the Secretary of State results in "the transmittal of judicial documents abroad," without determining whether service was completed domestically before the transmittal was made.  *MacroSolve* does not, however, address the question of ***where service culminates*** under Texas's statutory scheme for substituted service on the Secretary of State.  This is because *MacroSolve* was decided before *Water Splash*, so it did not benefit from *Water Splash*'s instruction that the Convention simply does not apply to transmissions of judicial documents abroad that, like the forwarding of process by the Secretary of State, do not culminate in service.  (Indeed, as discussed in above, that transmission ***cannot*** culminate in service because the Secretary of State is not authorized by Texas law to serve process at all.)  *MacroSolve*'s citation to an optional statutory provision, Tex. Admin. Code § 71.21(c) (providing for issuance of a certificate of service "[u]pon request"), and the absence of any analysis therein of relevant Texas case law regarding service, confirm that the *MacroSolve* opinion was not analyzing whether

14

service culminated in Texas or abroad as a matter of Texas law.  So the opinion is irrelevant to the analysis under *Water Splash* that must be done here.[6]

OnePlus calls its contrary reading of the *MacroSolve* decision "consistent with the holdings of other Texas courts."  Mot. at 4.  But the two purportedly consistent "holdings" that OnePlus identifies are actually nothing but dicta.  *See Nocando Mem. Holdings, Ltd. v. Credit Comm. De France*, No. 01-cv-1194, 2004 WL 2603739, *5 (W.D. Tex. Oct. 6, 2004) ("However, although Defendants have filed a motion to dismiss for insufficient service of process . . . they do not complain about the manner of service being defective on the basis that it conflicts with the Hague Convention . . . and thus any objection on this basis is waived."); *Alternative Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.*, CIV.SA05CA0172-XR, 2005 WL 1862631, at *2 (W.D. Tex. July 8, 2005) ("Defendant, however, does not argue that service is improper in this case because service by mail fails to comply with the Hague Convention, and thus the court deems this argument waived.").  And, of course, *Nocando* and *Alternative Delivery* also predate *Water Splash*.[7]

---

[6] OnePlus presents *MacroSolve* as holding that substituted service on the Secretary "is only effective, and a Certificate of Service can issue, after receipt by the Texas Secretary of State of a postal mail receipt indicating whether the forwarded notice was received." Mot. at 4.  The only thing that *MacroSolve* cites on that point is Texas Administrative Code § 71.21(c), which provides in part that, "***[u]pon request***, the Secretary of State will issue a certificate showing . . . [t]he disposition of the mailing shown on the postal return receipt." *Id.*  But § 71.21 says nothing about when service is complete.  That is addressed by TCPRC § 17.044(b) and the Texas case law interpreting it.  Nor does § 71.21 say that the Secretary will only send a certificate of service after receiving a postal mail receipt; it says that, upon request, the Secretary will provide a certificate that shows the disposition of its mailing to the nonresident defendant.

In sum, it makes little sense to read MacroSolve as having held, based solely on the citation of an expressly optional provision about obtaining ***evidence*** of service, that service itself was not effective until that certificate was fully ready to issue.  To the extent that the *MacroSolve* actually held to the contrary, however, it was wrongly decided.

[7] In addition, both *Nocando* and *Alternative Delivery* rest on the Fifth Circuit's holding in *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 384 (5th Cir. 2002), that the Hague Convention

    *iii)*  *Substituted Service on the Secretary of State Is Not Service*
        *by Mail*

  OnePlus makes an additional argument—that "service by mail" is improper because the

People's Republic of China has objected to Article 10 of the Hague Convention (*see* Mot. at 5).

This is completely inapposite.  OnePlus was ***not*** served by mail, and in fact, OnePlus does not

actually assert as much.  *See* Mot. at 5 ("[A]ny attempt by Plaintiff to serve OnePlus by mail

***would*** violate the Hague Convention." (emphasis added)).  As a matter of black letter Texas law,

service in this case occurred on October 5, 2018, when the Secretary of State was ***personally***

served at 2:50 pm in Austin, Texas.  Dkt. 10.  Because no service by mail occurred here, China's

objections to Article 10 are irrelevant.

*  *  *

  In sum, to correctly analyze Texas law as required by *Water Splash* and *Schlunk*, the

Court must look to the statutory scheme of the forum state, the Texas legislature's expressed

intent, and the controlling law of the Texas state courts.  From these sources, the only viable

conclusion is that service on OnePlus was complete and effective upon service on the Texas

Secretary of State.  The requirements of due process are satisfied because the Secretary of State

duly forwarded copies of the complaint and summons to OnePlus, and OnePlus actually received

notice of the suit well in advance of its extended deadline to respond to the complaint.  Because

service on a domestic agent was valid and complete under both state law and the Due Process

Clause, the Court's inquiry ends and the Hague Convention is not implicated.  *Schlunk*, 486 U.S.

at 707; *Water Splash*, 137 S. Ct. at 1509.

---

does not permit service by mail.  2005 WL 1862831, at *2.  This is no longer good law following
the Supreme Court's *Water Splash* decision.

### III.    IN THE ALTERNATIVE, THE COURT SHOULD PERMIT SERVICE BY ALTERNATE MEANS

The Court should deny OnePlus's Rule 12(b)(5) motion.  But if the Court determines that service on the Secretary of State was not proper, then it should allow service by alternative means rather than dismiss the complaint.  "Generally, dismissal of a complaint is inappropriate when there is a reasonable prospect that service may be properly effectuated."  *Blue Spike, LLC v. ASUS Comp. Intl.*, No. 6:16-cv-1384-RWS-KNM, 2018 WL 3301705, at *8 (E.D. Tex. Feb. 20, 2018); *MacroSolve*, 2012 WL 12903085, at *2 (denying motion to dismiss but granting motion to quash, and granting plaintiff extension of time to effect proper service); *see also Arista Records LLC v. Media Svcs. LLC*, No. 06 Civ. 15319(NRB), 2008 WL 563470, at *1 (S.D.N.Y. Feb. 25, 2008) (granting request for service by alternate means when raised in plaintiffs' opposition brief and not in separate motion).

Federal Rule of Civil Procedure 4(f)(3) authorizes a court to permit service on a foreign defendant "by other means not prohibited by international agreement, as the court orders." Court-ordered "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.'  It is merely one means among several which enables service of process on an international defendant."  *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (internal citations omitted).  A party need not exhaust other methods of service contemplated in Rule 4(f) before requesting permission to serve via alternate means, and there is no "hierarchy of preferred methods of service."  *Id.* at 1014-15.  The chosen method of service must satisfy the Due Process Clause, in that it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* at 1016 (quoting *Mullane*, 339 U.S. at 314).

17

American Patents requests authorization to serve OnePlus in the alternative via its U.S.-based outside counsel in this case.  *See Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, 3:17-CV-01827-N, 2018 WL 3330022, at *5 (N.D. Tex. Mar. 16, 2018) (finding that service was improper but permitting plaintiff "to effect alternative service under Rule 4(f)(3) on [a Chinese defendant] through its counsel in this matter" without having filed a separate motion).  The Hague Convention does not prohibit service by this or by similar means such as LinkedIn or Facebook addresses, and such methods have been found to comport with due process requirements.[8]

Without alternative means of service, American Patents would need to attempt to proceed according to the Hague Convention by service via China's Central Authority.  Unfortunately, as a practical matter, it is highly impractical, if not impossible, to serve defendants via the Hague Convention in the People's Republic of China.  It has historically taken several months for service to proceed via China's Central Authority.  *See* Ex. B ["Suing a Chinese entity in the United States? Expect a two year wait to serve process"], *available at* https://www.iam-media.com/frandseps/suing-chinese-entity-united-states-expect-two-year-wait-serve-process (last accessed Dec. 5, 2018) (reporting that, as of 2015, wait time averaged anywhere from one to

---

[8] *See, e.g.*, *X-Mobile Techs. LLC v. Lenovo Grp., Ltd.*, No. 4:17-cv-700, Dkt. 12 (E.D. Tex. Nov. 14, 2017) (granting motion for alternate service on Chinese defendant via email to counsel, LinkedIn, and Facebook); *Federal Trade Commn. v. PCCare247 Inc.*, No. 12 Civ. 7189(PAE), 2013 WL 841037, at *4-6 (S.D.N.Y. Mar. 7, 2013) (service of foreign defendant through email and Facebook messenger not prohibited by the Hague Convention and comports with due process requirements); *WhosHere Inc. v. Orun*, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3-4 (E.D. Va. Feb. 20, 2014) (service of foreign defendant via email, LinkedIn, and Facebook not prohibited by the Convention and comports with due process requirements); *Juicero, Inc. v. iTaste Co,*, No. 17-cv-01921-BLF, 2017 WL 3996196, at *2-3 (N.D. Cal. Jun. 5, 2017) (finding that alternate service on Chinese defendant company by email, Facebook, and on defendant's U.S. counsel comported with due process and was not prohibited by the Hague Convention or China's objections to particular Hague Convention articles).

eight months).  As of 2017, though, the average wait time had stretched to one year.  *Id.*  And

more recent reports state that parties should expect to wait between **one and two years** for

service in China, and that proofs of service are just now starting to be returned for requests in

some cases that were originally sent to China two years ago.  *Id.*  Indeed, there is concern among

the international law community that the Chinese Central Authority has recently "stopped

executing US requests altogether."  *Id.*[9]

Thus, attempted service via the Central Authority would, at a minimum, cause years of delay.

Quite possibly, it would be futile.  Courts have recognized that, where "there is no reason to

believe that service would be effective if plaintiffs were required to serve [a foreign defendant]

in accordance with the Hague Service convention procedures," alternate means of service are

appropriate.  *Arista Records LLC*, 2008 WL 563470, at *2 (authorizing service of Russian

defendants via U.S. counsel, because Russia, a signatory to the Convention, had suspended

judicial cooperation with the U.S.); *see also In re LDK Solar Secs. Litig.*, No. C 07-05182 WHA,

2008 WL 2415186, at *3 (N.D. Cal. Jun. 12, 2008) (authorizing alternate service on Chinese

defendant due to difficulty in effectuating service via Chinese Central Authority and noting that

plaintiff need not prove futility or complete lack of judicial assistance).  In the event the Court

were to find substituted service on the Secretary of State improper, American Patents requests

that the Court authorize service by alternate means without requiring that American Patents

---

[9] The difficulty of service via the Hague Convention is surely not lost on OnePlus, which is
discussed in the article attached as Exhibit B.  In the case under discussion, OnePlus was sued in
this Court in January 2017.  As of April 2018, the plaintiff had been attempting to serve OnePlus
for nearly a year.  *Id.*  At that time, counsel for the plaintiff told this Court that "[t]he Chinese
Ministry of Justice has not confirmed service or provided any case-specific information as to
when service might be effected."  *Id.*  OnePlus's familiarity with the reality of service via the
Hague Convention raises some question as to whether its insistence on this method of service in
this case is truly intended to result in "proper" service, or instead to avoid service entirely.

devote time and money to the unnecessarily lengthy, and possibly fruitless, pursuit of service through China's Central Authority.

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny OnePlus's Rule 12(b)(5) motion to dismiss the complaint and quash service of process.  If the Court determines, however, that substituted service on the Secretary of State was not proper, American Patents asks that the Court authorize service by email to OnePlus's U.S. counsel of record in this case, or by other appropriate electronic means.

Dated: December 10, 2018                 Respectfully submitted,

                                         /s/ *Larry D. Thompson, Jr.*
                                         Matthew J. Antonelli
                                         Texas Bar No. 24068432
                                         matt@ahtlawfirm.com
                                         Zachariah S. Harrington
                                         Texas Bar No. 24057886
                                         zac@ahtlawfirm.com
                                         Larry D. Thompson, Jr.
                                         Texas Bar No. 24051428
                                         larry@ahtlawfirm.com
                                         Christopher Ryan Pinckney
                                         Texas Bar No. 24067819
                                         ryan@ahtlawfirm.com
                                         Michael D. Ellis
                                         Texas Bar No. 24081586
                                         michael@ahtlawfirm.com

                                         ANTONELLI, HARRINGTON
                                         & THOMPSON LLP
                                         4306 Yoakum Blvd., Ste. 450
                                         Houston, TX 77006
                                         (713) 581-3000

                                         Stafford Davis
                                         State Bar No. 24054605
                                         sdavis@stafforddavisfirm.com
                                         Catherine Bartles

20

Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM
The People's Petroleum Building
102 North College Avenue, 13th Floor
Tyler, Texas 75702
(903) 593-7000
(903) 705-7369 fax

*Attorneys for American Patents LLC*