IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>ONEPLUS TECHNOLOGY (SHENZEN) CO., LTD.,<br><br>Defendant. | Case No. 4:18-CV-701-ALM |

## REPLY TO AMERICAN PATENTS' OPPOSITION TO ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD.'S MOTION TO DISMISS

Plaintiff embraces a counter-textual interpretation of Texas' substituted service provisions that runs contrary to the precedent of this Court and the United States Supreme Court: that a service for process requiring, by law, the transmission of documents abroad somehow does not implicate a treaty that applies "where there is occasion to transmit a judicial or extrajudicial document for service abroad." This is a wholly unfounded interpretation of Texas and U.S. federal law, and Plaintiff has failed to marshal a single case supporting the holding it now urges. To the contrary, clear precedent from this District, cited in Defendant's opening brief, mandates the relief Defendant seeks here, which is that the complaint be dismissed for insufficient service, with instructions to serve per the Hague Convention.

Plaintiff's argument is that where a statute allowing service provides that the service is "complete" in the U.S., even if it legally requires subsequent transmission of documents overseas, then the Hague Convention is irrelevant. But Plaintiff omits to mention that this argument was already rejected by this Court in Judge Davis' decision in *MacroSolve*. There, the

1

plaintiff's counsel (the same counsel as represents American Patents here) urged this theory -- that the Hague Convention does not apply to substituted service on the Secretary of State because the service is "complete" when delivered domestically. *See* Opp. to Spira Data's Mot. to Dismiss, Case 6:11-cv-00287, Dkt. 97 (E.D. Tex. August 29, 2011). The Court disagreed and ordered service quashed. Aware that it is recycling the same losing argument here, Plaintiff seeks refuge in the Supreme Court's decision in *Water Splash*. But that decision does not affect the relevant analysis at all, as discussed below. Therefore, Defendant respectfully submits that this court should order the complaint dismissed or, in the alternative, quash service.

I. **THE PRECEDENT OF THIS COURT SUPPORTS GRANTING ONEPLUS' MOTION**

Plaintiff criticizes OnePlus' reliance on *MacroSolve* because the court allegedly did not "determin[e] whether service was completed domestically before the transmittal was made." Opp. at 14. This is incorrect. "MacroSolve responds that the Hague Convention is not implicated when service is made on a domestic agent." *MacroSolve*, 2012 WL 12903085 at *2. The argument made in *MacroSolve*, made by the same outside counsel now representing Plaintiff, tracks the instant argument exactly: "service occurred when Spira's domestic agent, the Texas Secretary of State, was served in the state of Texas, not when the papers were forwarded by mail to Spira.  *See, e.g., Bonewitz v. Bonewitz*, 726 S.W.2d 227, 230 (Tex. Ct. of Appeals 1987)." *Opp. to Spira Data's Mot. to Dismiss*, Civil Case No. 6:11-cv-287 Dkt. No. 97. Plaintiff's counsel even went on to argue that "[t]he fact that the Secretary of State subsequently mailed the summons and complaint to Spira is immaterial, because service was complete in Texas when the Secretary of State was served." *Sur-Reply In Opp. to Spira Data's Mot. to Dismiss*, Civil Case No. 6:11-cv-287 Dkt No. 129. The Court therefore *did* contemplate when service was completed,

and found that because the Texas statute authorizing substituted service on the Secretary of State requires the transmission of documents abroad, the Hague Convention *does* apply.

The outsized significance that Plaintiff places on when service is "completed" is not consistent with the Supreme Court's precedent on service of process on foreign corporations. The Court was clear in *Schlunk* that the difference that matters is not when service is "completed", but whether the legal basis for service requires transmission of documents abroad:

> If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies.

*Schlunk*, 486 U.S. at 700. The Texas courts holding that § 17.044(b) conflicts with the Hague Convention (as cited in Defendant's opening brief) noted that Texas internal law allowing service on the Secretary of State requires the transmission of those documents abroad. *See, e.g., Alternative Delivery Solutions,* 2005 WL 1862631, at *2. Despite Plaintiff's arguments to the contrary, that is all that is required under *Schlunk*: that the law "defines the applicable method of serving process as requiring the transmittal of documents abroad." *Schlunk*, 486 U.S. at 700.

## II.   *MACROSOLVE*'S ANALYSIS REMAINS CORRECT FOLLOWING *WATER SPLASH*

*Water Splash* did nothing to upset the logic applied in *MacroSolve*. Indeed, the Supreme Court's decision in that case had nothing to do with the issue in this case, which is whether an involuntary local agent for service of process implicates the Hague Convention, nor did it address whether a service of process that is "completed" when an act occurs in the U.S. implicates the Convention. Despite Plaintiff's suggestion to the contrary, these issues simply were not present in *Water Splash*. In the Court's own words, the question in *Water Splash* was "whether the [Hague] Convention prohibits service by mail." *Water Splash, Inc. v. Menon*, 137

S. Ct. 1504, 1507. The Court's holding that the Hague Convention does not absolutely prohibit service by mail in no way supports Plaintiff's argument in this case.

The *Water Splash* case overturned the Fifth Circuit's prior holding in *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 383–85 (5th Cir. 2002) that the Hague Convention precluded, as an absolute matter, service by mail. But it replaced it with the rule that the Hague Convention precludes service by mail where the receiving country has objected to Article 10. *Water Splash*, 137 S. Ct. at 1513 (citing *Brockmeyer v. May*, 383 F.3d 798, 803–804 (9th Cir. 2004)). While *Water Splash* may impact the outcome of service by mail on a party based in Canada, which did not object to Article 10, it has no impact on the outcome of service on a party based in China, which has objected to Article 10. What *Water Splash* does reinforce, however, is that it is important for courts to consider the question of whether the "receiving state" has objected to certain manners of service under the Hague Convention.

Prior to *Nuovo Pignone*, cases in the Fifth Circuit only found substituted service permissible if the receiving state had not objected under the Hague Convention. *See*, *e.g.*, *Paradigm Entertainment, Inc. v. Video System Co., Ltd.*, 2000 WL 251731, at *7 (N.D. Tex. 2000). This is entirely consistent with *Water Splash*, and substituted service in Texas was only found to be effective because the receiving state did not object to Article 10(a): "*Because* Japan did not object to this provision of the Hague Convention, service upon Defendant was properly completed by the secretary of state's *forwarding a copy of service of process to Defendant* in accordance with Texas law." *Id.* (emphasis added).

The logic adopted by the court in *MacroSolve* therefore remains controlling. In *MacroSolve* the court found that the Hague Convention applies as a threshold matter to the situation where a party attempts to employ substituted service, which *Water Splash* does not

change. Under the Hague Convention, substituted service is ineffective on a party in China because China has objected to service by mail under Article 10. Plaintiff does not attempt to argue that substituted service on the Texas Secretary of State meets the requirements of the Hague Convention. Therefore, *Water Splash* in no way changes the holding of *MacroSolve*, which is dispositive in Defendant's favor.

**III.     REQUIRING TRANSMISSION IS DIFFERENT FROM REQUIRING RECEIPT**

Tellingly, Plaintiff does not rely on *Water Splash* for its holding, instead seeking to shoehorn the current case into cherry-picked statements regarding what actions "culminate in service." Response at 2, 6-7. Far from being a "definitive statement" changing the parameters of what constitutes "service" under the Hague Convention, as Plaintiff urges, *Water Splash* simply confirmed that when the Convention refers to "transmission" it is referring to service documents. The Supreme Court was not seeking to redefine what types of transmissions matter for purposes of the Hague Convention. *Schlunk* held that "The only transmittal to which the Convention applies is a transmittal abroad that is *required as a necessary part of service*." 486 U.S. at 707. Plaintiff's urging that the Supreme Court was *sub silentio* redefining the scope of the Convention because it chose to use a different phrase in *Water Splash* is implausible.

The Supreme Court's description of that scope in *Schlunk*, undisturbed by *Water Splash*, is exactly what is required by the Texas law. The Texas law directs the Secretary of State to transmit the summons and complaint to the address provided by a party. Tex. Civ. Pract. & Rem. Code § 17.045. The Secretary of State must then make such a transmission (…"shall"…). *Id.* This is a "transmittal abroad that is required as a necessary part of service."

That service is deemed "complete" when the Secretary of State receives the request, rather than when the request is transmitted abroad, determines when deadlines start to run, not when service is found legally sufficient. Plaintiff places considerable weight on *Campus*

5

*Investments, Inc. v. Cullever* in support of its argument that service is complete when service is received by the Secretary of State. Opp. at 5, *citing* 144 S.W.3d 464, 466 (Tex. 2004). In *Campus Investments* the Texas Supreme Court held that service was effective because the Secretary of State had transmitted the documents to the defendant at its registered address in Texas, even if the defendant did not receive them, where the defendant was negligent in not maintaining an up-to-date address. It does not hold, as Plaintiff suggests, that service can comply with Texas law when there is no transmission by the Secretary of State, which belies the argument that service being "complete" is relevant to this analysis.[1] Any transmission to a foreign party, such as that relied on to try to establish proper service by Plaintiff here, would implicate the Hague Convention.

Indeed, Plaintiff's argument leads to the absurd conclusion that direct mail service on a party in China would not be contrary to the Hague Convention. Under Texas law service by mail is "complete" when the document is deposited:

> Service by mail or commercial delivery service shall be complete upon deposit of the document, postpaid and properly addressed, in the mail or with a commercial delivery service.

Tex. R. Civ. P. 21a. Under Plaintiff's argument, were that "deposit" to occur in Texas (or indeed anywhere in the U.S.), the service would be pulled outside the operation of the Hague Convention and any party, worldwide, could be served by simply mailing the petition to the defendant from a Texas branch of the U.S. Postal Service or commercial delivery service. Even

---

[1] Plaintiff is careful to argue that service does not depend on actual receipt of the summons by a party being served, but does not and cannot argue that service can be effected *without* the transmission of documents to the provided address. *See* Response at 5 fn 3 (the Secretary of State must "immediately mail a copy of service documents . . . as required by § 17.045"); 12 ("*forwarding*, which is a duty the Secretary of state must undertake after he is served") (italics original, underline added).

though the document would then be transmitted abroad would, to Plaintiff, be irrelevant because the deposit alone was sufficient to render service "complete."

The Supreme Court precedent on this point does not support Plaintiff's argument that the physical location where service is complete is what matters. *Schlunk* did not state, contrary to Plaintiff's characterization, that service was domestic even though "the subsidiary must have also transmitted the complaint to the nonresident in Germany." Opp. at 7. What the Supreme Court held was that "*internal*, *private* communications [that] take place between the agent and a foreign principal" do not implicate the Hague Convention. *Schlunk*, 486 U.S. at 707. (emphasis added). This is in stark contrast to an official transmission, codified in the law, that is *required* as part of the domestic law allowing substituted service. Tex. Civ. Prac. & Rem. Code § 17.045(a). The Secretary of State does not have free discretion to decide how to notify a foreign party that it has been summoned. Unlike in *Schlunk* the summons must then be mailed internationally according to *the law of the forum state*, *i.e.* Texas. *Id*. Here, deadlines to respond *would* start to run from service on the Secretary of State, *if* that service meets the statutory requirements. *See Campus Investments*. Because the law Plaintiff relies on to effect service here *requires* an overseas transmission, the Hague Convention applies.

## IV.   PLAINTIFF'S REQUEST FOR ALTERNATE SERVICE SHOULD BE DENIED

Court-ordered alternate service is not appropriate here because none of the reasons used to justify such service are present here. The district court has "sound discretion" in deciding whether to order special service. *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). That discretion must be exercised in the context of the reasonableness of the circumstances. The relief Plaintiff requests is unreasonable because it is tantamount to baiting a defendant to retain counsel to contest service and then requesting permission to serve that appearing attorney. Allowing this process would effectively prevent a foreign party from ever

7

challenging the adequacy of service. *See Silva v. Gonzales*, 2014 WL 12663140, *6 fn 4 (S.D. Cal. 2014) ("To allow a plaintiff to 'cure' improper service by serving the counsel making a special appearance would effectively preclude a party from ever contesting improper service."). A foreign defendant should not be, in essence, punished for retaining counsel to contest service by allowing a plaintiff to use that retention of counsel against the defendant as Plaintiff seeks to do here.

Courts that have ordered service on counsel, as Plaintiff has requested, have typically required some prior effort to effect service prior or some other exigent circumstance. In *Rio Properties,* cited by many of the cases allowing alternate service, the court lay particular emphasis on the fact that there the defendant was "an elusive international defendant, striving to evade service of process" and had previously avoided multiple attempts at service. 284 F.3d 1007, 1016 (9th Cir. 2002). *See also Microsoft Corporation v. Buy More, Inc.*, 703 Fed. Appx. 476, 480 (9th Cir. 2017) (noting plaintiff "diligently attempted to serve Sajjad in the United States before filing the motion for alternative service: Microsoft attempted service at Sajjad's last known home addresses in the United States, Sajjad's counsel and Abdullahi both declined to accept service on her behalf, and Microsoft did not have an address for her in Iran."); *Forum Financial Group, LLC v. President, Fellows of Harvard College*, 199 F.R.D. 22, 24-25 (D. Me. 2001) ("In this case, based upon the representations made at this point in the proceedings, I conclude that service of process via [outside counsel] is appropriate *given Hay's efforts to evade service in Russia and [outside counsel]'s recent acceptance of service on Hay's behalf in a case also involving Hay's business dealings in Russia*") (emphasis added). *See also FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 536 (E.D. Va. 2005) (defendant "has *purposely acted to*

*conceal his whereabouts*. His *many motions* seeking to dismiss the case on *substantive non-jurisdictional grounds* are evidence that he has some form of notice") (emphasis added).

Indeed, cases in this district where special service has been ordered typically had some prior statutory attempt at service that was legally permissible but ineffective. This was the case in *X-Mobile*, cited by Plaintiff. *X-Mobile Techs. LLC v. Lenovo Grp., Ltd.,* No. 4:17-cv-700, Dkt. 12 (E.D. Tex. Nov. 14, 2017) (plaintiff had both requested waiver of service and already commenced service under the Hague Convention). In *RPost Holdings v. Kagan*, service was first attempted under the Hague Convention. 2012 WL 194388, at *1 (E.D. Tex. Jan. 23, 2012) ("RPost attempted to serve the Summons and Complaint upon Kagan under the provisions of the Hague Convention . . . Such attempt failed because the State of Israel Directorate of Courts informed RPost that service could not be completed at that physical address because Kagan had moved to an "unknown address.") While there is no "hierarchy" and court-ordered service is not a "last resort", the exercise of discretion now requested has almost universally required that *some* legally valid attempt at service was made previously. *Rio Properties*, 284 F.3d at 1014-15.

Alternatively, unique circumstances not present here have been deemed sufficient to warrant intervention by the court. These circumstances have been required "to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115–16 (S.D.N.Y. 2010), citing *Ryan v. Brunswick Corp.*, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002). Therefore in *Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, the court noted that the unserved defendant had advanced and argued non-jurisdictional defenses, and that counsel had agreed to waive service. Civil Case No. 6:05-cv-291, Dkt. No. 55 (E.D. Tex. Feb. 8, 2006). In *Fujitsu*, the court noted that in other cases ordering service on counsel there was coordinated

discovery due to case consolidation with other pending cases. *Fujitsu Ltd. v. Belkin Intern., Inc.*, 782 F.Supp.2d 868, 880 (N.D. Cal. 2011). That is not the case here, where there is no consolidated discovery with another case. In *Kowalski v. Anova Food, LLC*, the court noted that there could be no evasion of service because plaintiff had not yet attempted service on the defendant in Malta. 2012 WL 3308886, *2 (D. Hi 2012) ("Plaintiffs have not presented any facts to suggest that [defendant] is evading service. Plaintiffs do not assert that [defendant] has attempted to hide its location in Malta. In fact, it does not appear that Plaintiffs have attempted to serve [defendant] in Malta.") Similarly, here, plaintiff has not yet attempted any proper method of service to show that court-ordered service is justified.

In *Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, the same attorneys appeared for a foreign entity and its U.S. affiliate, and moved to transfer venue. The foreign entity moved to dismiss six months after filing, with the court ultimately quashing service a year after the complaint had been filed. *See* Docket, No. 3:17-cv-1827 (N.D. Texas). The case against the U.S. affiliate was ongoing, and had already begun claim construction briefing. There, failure to grant court-ordered service would have complicated the litigation of an ongoing case against other parties, and the court noted that defendant's counsel was already representing a related company in that ongoing litigation. 2018 WL 3330022, at *5 (N.D. Tex. Mar. 16, 2018). By contrast, here there is no other party in this litigation that has already been served, let alone one represented by the same outside counsel. Discovery has not yet commenced. The unique circumstances in *Fundamental Innovation* are simply not present here.[2]

---

[2] A full discussion of the circumstances surrounding service in other cases is beyond the scope of this brief. Contrary to Plaintiff's footnote 9, that case was in Delaware, not this Court, and OnePlus *was* successfully served under the Hague Convention on November 19, 2018. *Stipulation*, Case No. 1:17-cv-0089 (D. Del. Dec. 6, 2018). Certain of the factors referenced in Plaintiff's article also appear to have been resolved. *Declaration of Clyde Siebman* Exh. A.

Dated: December 17, 2018

Respectfully submitted,

By: /s/ Clyde M. Siebman
Clyde M. Siebman
TX Bar No. 18341600
SIEBMAN FORREST BURG & SMITH, L.L.P.
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas  75090
(903) 870-0070 (office)
(903) 870-0066 (fax)
clydesiebman@siebman.com

*Attorneys for OnePlus Technology (Shenzhen) Co., Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 17th day of December, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).  Any other counsel of record will be served by a facsimile transmission and/or first class mail.

/s/ Clyde M. Siebman
Clyde M. Siebman