IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC, <br><br> Plaintiff, <br><br> v. <br><br> ONEPLUS TECHNOLOGY (SHENZEN) CO., LTD., <br><br> Defendant. | CIVIL ACTION NO. 4:18-cv-701-ALM <br><br> JURY TRIAL DEMANDED |

**SUR-REPLY TO ONEPLUS TECHNOLOGY (SHENZEN) CO., LTD.'S MOTION TO DISMISS**

I.  **SERVICE ON ONEPLUS OCCURRED DOMESTICALLY, SO THE HAGUE CONVENTION IS NOT IMPLICATED**

   A.  **OnePlus Misconstrues *Water Splash* and *Schlunk***

In its reply, OnePlus fails to engage with the Supreme Court's directive that the Hague Convention applies only to transmissions that "culminate in service" abroad. *Water Splash*, 134 S. Ct. at 1509; *Schlunk*, 486 U.S. at 701. Indeed, the word "culminate" appears but once in OnePlus's reply—and that single use was to criticize American Patents for taking supposedly "cherry-picked statements" from Supreme Court precedent. Reply at 5. But that the Hague Convention excludes from its scope "transmissions abroad that do not culminate in service," *Water Splash*, 134 S. Ct. at 1509, is not a "counter-textual interpretation" of the Convention. Reply at 1. Instead, it is the natural, common-sense interpretation of a treaty that only covers communications made "***for service abroad***."

The Supreme Court could hardly have been clearer: "Article 1 makes clear that the Convention 'applies only when there is both ***transmission*** of a document from the requesting state to the receiving state, ***and service*** upon the person for whom it is intended.'" *Water Splash*, 137 S. Ct. at 1509 (quoting *Schlunk*, 486 U.S. at 701) (emphasis added). So in *Schlunk* the Hague Convention was not implicated by serving a domestic subsidiary "which, under state law, is the foreign corporation's involuntary agent for service of process." *Id.* at 697. Serving the subsidiary was "substituted service" domestically on the foreign defendant. *Id.* at 706-07.

OnePlus attempts to distinguish *Schlunk* on the basis that the relevant state law did not explicitly require that service documents be transmitted abroad as a part of service. Reply at 7. But, as explained below, Texas law likewise does not require such a transmission before service culminates domestically. Under Texas's statutory scheme (which OnePlus largely ignores) the Texas Secretary of State is an involuntary domestic agent for service of process, just as the defendant's domestic subsidiary was in *Schlunk*. The relevant transmission—that is, the "formal

1

delivery of documents that is legally sufficient to charge the defendant with notice"—is made between a process server and the Secretary of State, in the United States. *See* Dkt. 10.

Further, OnePlus mischaracterizes both the import of *Water Splash* and American Patents' argument concerning it. *See* Reply at 3, 5. Focusing on *Water Splash*'s specific facts, OnePlus ignores the Supreme Court's underlying reasoning.[1] To reach its conclusion about service of process by mail in *Water Splash*, the Court had to address the defendant's argument that a savings clause in Article 10(a) of the Convention did not apply to service of process. The Court thus framed the issue as whether Article 10(a) "encompasses sending documents *for the purposes of service*." 137 S. Ct. at 1508 (emphasis in original). The Court reasoned that it did, but only after first confirming that the Convention's overall scope is limited to documents "'*to be served abroad*,'" and that the Convention does not "interfere with any non-service communications." *Id.* at 1509 (quoting Hague Convention at preamble, emphasis in opinion).

In this way, *Water Splash* clarified the scope of the Convention as delineated in *Schlunk*. It did not "chang[e] the parameters of what constitutes 'service' under the Hague Convention" (*see* Reply at 5), and American Patents never argued as much. American Patents has been consistent in explaining that (1) *Water Splash* provided further clarification to *Schlunk* by making clear that the Convention applies only to transmissions culminating in "service abroad," and (2) the "parameters of what constitutes 'service'" (*see* Reply at 5) are defined by the law of the forum state. *See, e.g.*, Opp'n at 7 ("In *Water Splash*, the Supreme Court clarified the Hague Convention's scope in a way that eliminated any possible uncertainty that it extends beyond

---

[1] As explained in American Patents' opposition at 16, *Water Splash*'s holding as concerns Article 10(a) of the convention is not relevant to this motion, because American Patents did not serve OnePlus by mail. *See* Reply at 4. Likewise, OnePlus's assertion that "it is important for courts to consider the question of whether the 'receiving state' has objected to certain manners of service under the Hague Convention," *see* Reply at 4, is irrelevant because here, there was no foreign "receiving state." Service was accomplished in Texas on OnePlus's involuntary agent for service, the Texas Secretary of State.

service of documents abroad[.]"), 5 ("Rather, [the Convention] applies only to service which culminates abroad—a question that is answered by looking to the law of the forum state.").

Thus, the Supreme Court has made clear (especially through *Water Splash*) that: (1) only transmissions which **culminate in service abroad** implicate the Convention; and (2) to determine whether service culminates abroad, courts *must* look to the law of the forum state.

### B. OnePlus Invites the Court to Ignore the Law of the Forum State

Despite these clear directives, glaringly absent from OnePlus's reply is any meaningful engagement with Texas's statutory scheme for substituted service of process on the Secretary of State. *See* Opp'n at 3-4, 8-13. By ignoring it (and thereby implying that the Court should do the same), OnePlus invites legal error in at least three ways.

*First*, OnePlus ignores that the statutory provisions governing *service*, TCPRC § 17.044(b) and Texas Administrative Code § 71.21(a), do not require that the Secretary transmit any document abroad. These provisions make clear that the Secretary is an involuntary agent for service of process, TCPRC § 17.044(b), and that service is "accomplished . . . by delivering to the Secretary of State or to any clerk so designated by the secretary of state" two copies of the process, Tex. Admin. Code § 71.21(a). These provisions govern service itself, *i.e.*, the "formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Schlunk*, 486 U.S. at 700. Indeed, OnePlus concedes that service is complete upon service on the Secretary of State. Reply at 5. But by ignoring the statutory text, it attempts to avoid the inconvenient fact that § 17.044(b) and § 71.21(a) say nothing about the Secretary transmitting documents *to effectuate service*.

*Second*, OnePlus ignores that the statutory provisions which describe the Secretary's *duty to forward*, TCPRC § 17.045(a) and Texas Admin. Code § 71.21(b), are separate from the provisions governing service and explicitly do not take effect until service itself has already

culminated in Texas.

*Finally*, and perhaps most tellingly, OnePlus ignores that the Secretary of State cannot, as a matter of Texas law, serve process. Both Texas appellate courts, and the Fifth Circuit interpreting Texas law, have rejected the argument that the Secretary's forwarding of service documents constitutes service. *See, e.g., World Distributors, Inc. v. Knox*, 968 S.W.2d 474, 479 (Tex. App. – El Paso 1998); *Leedo Cabinetry v. James Sales & Dist., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998). Under the controlling law of the forum state, the Secretary of State ***cannot*** effect "service abroad" as a matter of law. Yet service abroad is the only service which implicates the Hague Convention. *Water Splash*, 134 S. Ct. at 1509.

### C. *MacroSolve* Is Neither "Controlling" Nor "Dispositive"

*MacroSolve*—the ***only*** holding on which OnePlus relies—simply does not help OnePlus in this regard. OnePlus attempts to paint *MacroSolve* as "controlling" (Reply at 4), but as the opinion of a district court in a separate case, it obviously is not. Nor is it "dispositive" (Reply at 5), because in deciding *MacroSolve*, the Court did not address whether service culminated domestically or abroad. As explained in American Patents' opposition, this is understandable because the *MacroSolve* court did not have the benefit of *Water Splash*'s clarification that the Convention applies only to transmissions culminating in service abroad—not to mere "non-service communications."[2] *See* Opp'n at 13-15.

Upon an analysis of the provisions that actually control service and forwarding, of the binding interpretations of the Texas courts and the Fifth Circuit—and with the benefit of *Water*

---

[2] American Patents is aware that certain arguments and cases were presented to the Court in *MacroSolve* that are also present in American Patents' briefing. However, as American Patents explained in its Opposition, the *MacroSolve* decision did not decide where substituted service culminates (or, for that matter, mention the key Texas state court opinions that American Patents has cited). Because it was decided before *Water Splash*, the *MacroSolve* court framed the issue more broadly and evidently did not view these authorities as determinative of its decision. Post-*Water Splash*, though, it is clear that they are issue-determinative.

*Splash*'s clarification of the Convention' scope, which *MacroSolve* did not have—it is clear that substituted service culminates domestically upon service on the Texas Secretary of State.  This result is fair to OnePlus and other foreign entities who do business in Texas and benefit from its extensive customer base, but nonetheless evade their legal responsibility to designate a Texas agent for service of process.  Texas's statutory scheme for substituted service fairly balances the interests and rights of all parties, by providing would-be plaintiffs with a mechanism for **service** on these foreign entities domestically, while ensuring that the defendants' due process rights are protected via **forwarding** them notice of that service once completed.  This scheme is fully compatible with the letter and spirit of the Hague Convention.

> **D.     OnePlus's New Argument Concerning Service by Mail Is Without Merit**

According to OnePlus, American Patents' position "leads to the absurd conclusion that direct mail service on a party in China would not be contrary to the Hague Convention," because under Texas Rule of Civil Procedure 21a "service by mail is 'complete' when the document is deposited." Reply at 6.  But Rule 21a does not apply to service of an original complaint and summons, which is the service at issue in this motion.  *See In re E.A.*, 287 S.W. 3d 1, 4 (Tex. 2009) ("Rule 21a applies to all pleadings required to be served under Rule 21 other than the original petition and except as provided in the rules.").  Instead, Texas Rule of Civil Procedure 106 governs service of process, and it lays out a more stringent procedure than Rule 21a.  Unlike Rule 21a, Rule 106 allows for service "by registered or certified mail, return receipt requested," and ***does not*** include language that service is "complete" upon deposit. Rule 106(a)(2); *compare* Rule 21a (providing for service "by mail" but not requiring either registered or certified mail, or for documentation by return receipt).  Indeed, Rule 106 expressly provides that if service has been attempted "but has not been successful"—*i.e.*, if the defendant did not actually receive the process—then a plaintiff may request service by alternate means. Rule 106(b).  *See, e.g.*, *Wilson*

*v. Dunn*, 800 S.W. 2d 833, 834 (Tex. 1990) (noting that, after repeated unsuccessful efforts to effect service in person and by mail, trial court had authorized substituted service under Rule 106(b)); *see also* Rule 107(c) ("When the citation was served by registered or certified mail as authorized by Rule 106, the return by the officer or authorized person must also contain the return receipt with the addressee's signature.").

But under either Rule 106 or Rule 21a, OnePlus's new attack misses the mark. The Convention "applies only when there is both transmission of a document from the requesting state to the receiving state, ***and*** service upon the person for whom it is intended." *Water Splash,* 137 S. Ct. at 1509. With service by mail, "the person for whom [the service] is intended" is in fact the defendant abroad—precisely what the Convention was intended to cover. In contrast, substituted service on the Secretary of State is domestic service because the person being served—the defendant's agent for service—is in this country. With substituted service, the "formal delivery of documents" is the delivery of a complaint and summons to the Secretary of State, who stands in the shoes of the foreign defendant as involuntary domestic agent and constructively receives process on its behalf. This is analogous to service on a U.S. registered agent or other domestic agent. (And, notably, service on the Secretary is authorized only because OnePlus does not maintain a registered agent in Texas—despite doing business here—in violation of Texas law.) Under Texas law, service culminates with service on the agent. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 274 (Tex. 2012) ("Although PNS claims it did not receive notice of the suit until February 10, 2010, some nine years after the default was taken, service effected on a registered agent within the scope of its agency is imputed to the litigant.") (citing *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W. 2d 295, 300 (Tex. 1981) (holding that notice to an agent, in the scope of his agency, is notice to the principal)).

6

The language from Rule 21a that OnePlus relies on (and which is absent from Rule 106) states that "[s]ervice by mail or commercial delivery shall be complete upon deposit of the document . . . in the mail or with a commercial delivery service." This language has no bearing on where service culminates. Rather, it serves an evidentiary purpose: "Rule 21a sets up a presumption that when notice . . . properly addressed and postage prepaid is mailed, that the notice was duly received by the addressee." *Cliff v. Huggins*, 724 S.W.2d 778, 779-80 (Tex. 1987). The presumption, however, may be "rebutted by an offer of proof of nonreceipt." *Id.*; *see also Webb v. Oberkampf Supply of Lubbock, Inc.*, 831 S.W. 2d 61, 64-65 (Tex. Ct. App. – Amarillo 1992) (where plaintiff attempted service by mail under Rule 106, but certified mail was returned unclaimed and receipt card unsigned, service was not completed and default judgment could not stand). Service by mail thus does not culminate **until a defendant receives it**. Stated otherwise, the "formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action," *Schlunk*, 486 U.S. at 700, is the mailing of documents directly to the foreign defendant. So if the defendant being served is abroad, service culminates abroad.

Because of this, the tension that OnePlus tries to create between Texas' rules governing substituted service on the Secretary of State and those governing service by mail is illusory. To conclude that service on a domestic agent is domestic service (as the Court must, applying state law) in no way leads to a concurrent conclusion that service by mail on a foreign defendant directly is "pulled outside the operation of the Hague Convention." *See* Reply at 6. To accurately draw that parallel, OnePlus would have had to show that Texas law provides that the *mailbox itself* receives service of process in the U.S. as domestic agent on the foreign defendant's behalf. Not surprisingly, OnePlus was unwilling to make that argument.

## II.     SERVICE BY ALTERNATE MEANS IS ALSO APPROPRIATE HERE

Service by alternate means should be authorized in this case if the Court finds that

7

substituted service on the Texas Secretary of State was inadequate. OnePlus does not dispute that a party need not exhaust other methods of service before requesting permission to serve by alternate means. It does not dispute that courts frequently authorize alternate service when, as a practical matter, service via the Hague Convention would be highly impractical, if not impossible. Nor does it dispute that such is the case here. Finally, OnePlus does not dispute that it has had fair notice of this pending action since well before the extended answer deadline.

Alternate service in this case is reasonable at least because Hague service on a Chinese defendant like OnePlus is expected to take one to two years—assuming the Chinese Central Authority executes the request at all. *See* Opp'n at 18-19. Rather than refute this timeline, OnePlus's reply actually confirms it. As OnePlus admits, in one case that was filed against it in January 2017, it was not served under the Hague Convention until November 2018. Reply at 10 n.2; *see also Koninklijke Kpn N.V. v. OnePlus Tech. (Shenzen) Co., Ltd.*, No. 1:17-cv-89, at Dkt. 1 (D. Del.). According to a status report filed in that case, the plaintiff first forwarded a summons and complaint to the Central Authority in April 2017. No. 1:17-cv-89, Dkt. 16-1 at ¶ 8. It thus took well over a year and a half for Hague Convention service to be effectuated.

OnePlus suggests that "[c]ertain of the factors referenced in Plaintiff's article [about service delays in China] also appear to have been resolved." Reply at 10 n.2. But in support of that statement OnePlus cites an article that was published *before* the article American Patents provided, and which nonetheless reiterates the "excruciatingly slow" timeline for Hague service in China. Reply at Ex. A to Siebman Decl. ("Lately, though, more than a year passes, and there are rumblings in the transnational litigation community that they've stopped executing U.S. requests altogether."). Under these circumstances alone, it would be prudent for the Court to authorize alternate service. *See, e.g., Arista Records LLC v. Media Svcs. LLC*, No. 06 Civ. 15319(NRB), 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008); *In re LDK Solar Secs. Litig.*,

No. C 07-05182 WHA, 2008 WL 2415186, at *3 (N.D. Cal. Jun. 12, 2008).

OnePlus says, however, that this case does not present the "unique circumstances" needed to justify alternative service, and faults plaintiff for not trying to complete Hague service first.  Reply at 7-8.  But as this Court has previously held, "Rule 4(f) does not require that the plaintiff try to serve an internationally–based defendant under Rule 4(f)(1) or 4(f)(2) before authorizing [alternative] service under Rule 4(f)(3)." *WorldVentures Holdings, LLC v. Mavie*, 4:18-CV-393-ALM, 2018 WL 6523306, at *13 (E.D. Tex. Dec. 12, 2018) (citing *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015) ("By its plain terms, Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may authorize service by 'other means.'")).  And despite OnePlus's complaints about "baiting," Reply at 7, there is nothing nefarious or even unusual about allowing alternate service through a defendant's U.S.-based counsel after they appear in the case.  Indeed, "courts routinely direct service on an international defendant's counsel under Rule 4(f)(3)." *WorldVentures Holdings,* 2018 WL 6523306, at *14; *see also Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries,* 766 F.3d 74, 83 (D.C. Cir. 2014) ("A number of courts thus have sanctioned service on United States counsel as an alternative means of service under Rule 4(f)(3). . . .").

By insisting that service can only proceed under the Convention, OnePlus tips its hand.  OnePlus does not seek fair notice of suit; it seeks only delay, expense, and uncertainty.  That is a particular problem here because there are other cases involving the same patents pending in this District.  And in at least one related case, the Court has already set the initial Rule 16 management conference, *Markman* hearing, and trial for the same dates and times as this one.  Dkt. 14; *see also* No. 4:18-cv-675, at Dkt. 29.  Allowing OnePlus to delay service by 1-2 years (at best) would hamper the Court's efforts of streamlining this related litigation.  What is more, the Court has already set trial in this case for April 2020, which is less than 1.5 years away.  So if

9

OnePlus has its way, there is a good chance that Hague Convention service would not be complete before the scheduled trial date!

As OnePlus's own cited cases highlight, courts frequently grant alternate service when plaintiffs have made previous attempts at service, where defendants have notice of the suit but nonetheless resist service, or where there are related cases with overlapping schedules. *See* Reply at 8-10 (citing cases). All of those factors are present here.

In the end, "[t]he purpose of service is to give appropriate notice to allow parties to properly present their substantive arguments and ***not to create considerable procedural hurdles to delay an action***." *WorldVentures Holdings,* 2018 WL 6523306, at *14 (emphasis added). OnePlus ignores not only that truth about service, but also the paramount mandate of the Federal Rules of Civil Procedure: That they "are to 'be construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.* (emphasis in opinion) (quoting Fed. R. Civ. P. 1 and authorizing alternative service through defendants' U.S.-based counsel).[3]

Dated: January 9, 2019

Respectfully submitted,

/s/ *Larry D. Thompson, Jr.*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney

---

[3] Further, *Silva v. Gonzales*, No. 3:13-cv-1587-CAB-KSC, 2014 WL 12663140, at *6 n.4 (S.D. Cal. May 23, 2014), is distinguishable because there, the plaintiffs never requested alternate service. Rather, they improperly attempted to serve the foreign defendants by mail and then argued that serving defendants' counsel cured that improper service.

10

>Texas Bar No. 24067819
>ryan@ahtlawfirm.com
>Michael D. Ellis
>Texas Bar No. 24081586
>michael@ahtlawfirm.com
>
>ANTONELLI, HARRINGTON
>& THOMPSON LLP
>4306 Yoakum Blvd., Ste. 450
>Houston, TX 77006
>(713) 581-3000
>
>Stafford Davis
>State Bar No. 24054605
>sdavis@stafforddavisfirm.com
>Catherine Bartles
>Texas Bar No. 24104849
>cbartles@stafforddavisfirm.com
>THE STAFFORD DAVIS FIRM
>The People's Petroleum Building
>102 North College Avenue, 13th Floor
>Tyler, Texas 75702
>(903) 593-7000
>(903) 705-7369 fax
>
>*Attorneys for American Patents LLC*